IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION

ZECKEYA PERRY                                                                                                PLAINTIFF
ADC # 156241

v.                                                  4:23CV00461-JM-JTK

ASA HUTCHINSON, et al.                                                                              DEFENDANTS

**PROPOSED FINDINGS AND RECOMMENDATIONS**

**INSTRUCTIONS**

The following recommended disposition ("Recommendation") has been sent to United States District Judge James M. Moody. Any party may file written objections to all or part of this Recommendation. If you do so, those objections must: (1) specifically explain the factual and/or legal basis for your objections; and (2) be received by the Clerk of this Court within fourteen (14) days of this Recommendation. By not objecting, you may waive the right to appeal questions of fact.

**DISPOSITION**

**I.      Introduction**

Zeckeya Perry ("Plaintiff") is currently confined in the East Arkansas Regional Unit of the Arkansas Division of Correction ("ADC"). Plaintiff's claims in this case arise from the time he was incarcerated at the Cummins Unit of the ADC. He filed this action pro se alleging that the former Governor of the State of Arkansas and numerous ADC officials violated his constitutional rights. (Doc. No. 2). Plaintiff also filed a Motion to Proceed In Forma Pauperis, which was granted. (Doc. Nos. 1, 3).

The Court screened Plaintiff Complaint pursuant to the Prison Litigation Reform Act ("PLRA") and in forma pauperis statute and found Plaintiff's claims were time barred. (Doc. No.

4). United States District Judge James M. Moody agreed and dismissed this case, after which Plaintiff filed timely objections that made Judge Moody reconsider; Judge Moody set aside the Order and Judgment dismissing this case and referred the action back to the undersigned. (Doc. No. 12).

Pursuant to the PLRA and in forma pauperis statute, the Court "shall dismiss [a] case at any time if the court determines that . . . the action . . . fails to state a claim on which relief may be granted." 28 U.S.C. § 1915(e)(2)(B)(iii). As such, the Court recommends that Plaintiff's Complaint be dismissed for the reasons set out below.

## II. Screening

The PLRA requires federal courts to screen prisoner complaints seeking relief against a governmental entity, officer, or employee. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint or portion thereof if the prisoner has raised claims that: (a) are legally frivolous or malicious; (b) fail to state a claim upon which relief may be granted; or (c) seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b). See also 28 U.S.C. § 1915(e) (screening requirements).

An action is frivolous if "it lacks an arguable basis either in law or in fact." Neitzke v. Williams, 490 U.S. 319, 325 (1989). Whether a plaintiff is represented by counsel or is appearing pro se, his complaint must allege specific facts sufficient to state a claim. See Martin v. Sargent, 780 F.2d 1334, 1337 (8th Cir.1985).

An action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007).

In reviewing a pro se complaint under § 1915(e)(2)(B), the Court must give the complaint the benefit of a liberal construction. Haines v. Kerner, 404 U.S. 519, 520 (1972). The Court must also weigh all factual allegations in favor of the plaintiff, unless the facts alleged are clearly baseless. Denton v. Hernandez, 504 U.S. 25, 32 (1992).

**III.   Discussion**

**A.   Plaintiff's Complaint**

Plaintiff sued former Governor of the State of Arkansas Asa Hutchinson, Secretary of Corrections Wendy Kelley, 15 other identified ADC officials, and two unidentified ADC officials (collectively, "Defendants") in their personal capacities only. (Doc. No. 2 at 2). Plaintiff's claims arise from the alleged lack of sufficient Covid-19 precautions in spring and early summer of 2020. (Id. at 3-6, 14, 15, 18, 26, 27, 28, 38, 91).

Plaintiff alleges: there was insufficient social distancing at Cummins at the time; no masks were provided; neither staff nor inmates were properly screened for the virus; the Unit did not go on lockdown quickly enough; there was no isolation or testing after an employee tested positive; asymptomatic Covid-positive employees were allowed to return to work; and insufficient preventative measures were taken regarding inmates who tested Covid-19 positive. (Id. at 4 – 8). Plaintiff maintains Defendants were negligent and deliberately indifferent to a serious risk to his health and safety, either by failing to implement or enforce sufficient protocols, or by failing to train or supervise those who were supposed to enforce the protocols. (Id. at 9 – 12). Plaintiff learned on April 24, 2020 that he tested Covid-19 positive. (Id. at 6). He says that then "they started to separate positive and negative cases [as of approximately May 12, 2020], but by that time the impact had been done." (Id.).

Plaintiff asserts Defendant Hutchinson "condoned, approved of, and turned a blind eye to policies, procedure, decisions, and actions and omissions of subordinates . . . ." (Doc. No. 2 at 9). Defendant Kelly "issued memorandums and protocols [but] failed to ensure . . . compliance[,]" "turned a blind eye to subordinates' actions and omissions[,]" and failed to train and supervise subordinates, while Defendant Payne failed to train and supervise subordinates regarding masks and social distancing. (Id. at 9-10). According to Plaintiff, Defendants Reed and Straughn failed to properly supervise subordinates and failed to "monitor compliance of directives[.]" (Id. at 10). Defendants Culclager, Bolden, and Rickett allegedly were negligent and deliberately indifferent when they did not "immediately lock down" the Cummins Unit after learning that an employee tested positive for Covid-19 and did not sufficiently screen for Covid in the Unit. (Id. at 10-11). Plaintiff maintains Defendants Daniels and Robertson violated his Eighth Amendment rights by failing to ensure masks were worn, failing to ensure the Unit went on lock down, and in connection with quarantine procedures. (Id. at 11). Defendants Hill, Thomas, Shilling, Mixon, Johnson and Does allegedly failed to implement proper social distancing. (Id. at 11-12).

Plaintiff seeks damages. (Doc. No. 2 at 12).

**B.     Failure to Train or Supervise**

Plaintiff alleges multiple Defendants failed to train or supervise subordinates. Liability in an action brought under 42 U.S.C. § 1983 is based on an individual's own actions. Parrish v. Ball, 594 F.3d 993, 1001 (8th Cir. 2010) (citing Ashcroft v. Iqbal, 556 U.S. 662, 676 (2009)). It follows that supervisor liability in § 1983 actions is limited. A supervisor incurs liability only if he is personally involved in a constitutional violation, or when his corrective inaction constitutes deliberate indifference to the violation. Choate v. Lockhart, 7 F.3d 1370, 1376 (8th Cir. 1993).

The deliberate indifference standard applies to a failure-to-train or supervise claim. To succeed on a failure-to-train or supervise claim, a plaintiff must show that the supervisor:

> (1) had notice of a pattern of unconstitutional acts committed by subordinates; (2) was deliberately indifferent to or tacitly authorized those acts; and (3) failed to take sufficient remedial action; (4) proximately causing injury to [the plaintiff]

Perkins v. Hastings, 915 F.3d 512, 524 (8th Cir. 2019) (internal citation omitted).

Plaintiff's allegations that certain Defendants failed to train or supervise subordinates are largely conclusory. He provided no specific instances of any supervisor having specific knowledge of a subordinate or subordinates engaging in an unconstitutional act. The deliberate indifference standard requires a showing of knowledge of a subordinate's wrongdoing. Because liability under § 1983 is based on each individual conduct, without showing a Defendant's knowledge of earlier violations, a plaintiff cannot establish deliberate indifference. Plaintiff's general, conclusory allegations are insufficient to establish deliberate indifference.

### C.     Conditions of Confinement

Plaintiff challenges the conditions of his confinement at the very early stages of the Covid-19 pandemic. To state an Eighth Amendment claim challenging conditions of confinement, an inmate must show the alleged violation is "'objectively [and] sufficiently serious,'" that is, the inmate was "'incarcerated under conditions posing a substantial risk of serious harm.'" Kulkay v. Roy, 847 F.3d 637, 642-43 (8th Cir. 2017). An inmate must also show that the defendant(s) knew of the risk and failed to respond to it in a reasonable way. Id. at 643.

### D.     Qualified Immunity

Qualified immunity may shield a government official from liability when his or her conduct does not violate "clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). Qualified immunity is a

5

question of law, not a question of fact. McClendon v. Story County Sheriff's Office, 403 F.3d 510, 515 (8th Cir. 2005). Thus, issues concerning qualified immunity are appropriately resolved on summary judgment. See Mitchell v. Forsyth, 472 U.S. 511, 526 (1985) (the privilege is "an *immunity from suit* rather than a mere defense to liability; and like an absolute immunity, it is effectively lost if a case is erroneously permitted to go to trial.").

To determine whether defendants are entitled to qualified immunity, the courts generally consider two questions: (1) whether the facts alleged or shown, construed in the light most favorable to the plaintiff, establish a violation of a constitutional or statutory right; and (2) whether that right was so clearly established that a reasonable official would have known that his or her actions were unlawful. Pearson v. Callahan, 555 U.S. 223, 232 (2009).[1] Defendants are entitled to qualified immunity only if no reasonable fact finder could answer both questions in the affirmative. Nelson v. Correctional Medical Services, 583 F.3d 522, 528 (8th Cir. 2009).

### E. Defendants Are Entitled to Qualified Immunity on Plaintiff's Claims

The issue of Covid-19 protocol and precautions in Arkansas's prisons during the spring and early summer of 2020 has been raised in other lawsuits in this District. The case that perhaps drew the most attention was Frazier v. Kelley, et al., 4:20-cv-00434-KGB (E.D. Ark.). In that case, on May 19, 2020 United States District Judge Kristine G. Baker denied plaintiffs' motion for a preliminary injunction that sought relief for some of the same or similar violations Plaintiff alleges in this case. Frazier v. Kelley, 460 F. Supp. 3d 799 (E.D. Ark. 2020). Later cases considering similar claims regarding Covid-19 protocol and precautions during that period of time

---

[1] Courts are "permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." Nelson, 583 F.3d at 528 (quoting Pearson v. Callahan, 555 U.S. at 236).

6

have taken judicial notice of facts in the *Frazier* case. See, for example, Wright v. Gibson, No. 4:21-CV-00280-KGB-PSH, 2022 WL 4717982, at *2 (E.D. Ark. May 2, 2022), report and recommendation adopted in part, rejected in part, No. 4:21-CV-00280-KGB, 2022 WL 4628444 (E.D. Ark. Sept. 30, 2022) (granting motion to dismiss finding qualified immunity solely on clearly established prong; declining to adopt recommendation as to no constitutional violation prong). For example, in Wright v. Gibson, United States Magistrate Judge Patricia S. Harris took judicial notice of the following facts from Frazier v. Kelley, et al:

> The CDC issued its Interim Guidance on Management of Coronavirus Disease 2019 (COVID-19) in Correctional and Detention Facilities on March 23, 2020. 460 F. Supp. 3d at 811. These guidelines were developed, in part, to help correctional facilities "ensure the protection, health, and safety of incarcerated people." Id. On March 27, 2020, the Arkansas Department of Health ("ADH") provided its recommendations entitled "COVID-19 Guidance for State Correctional Facilities and Local Detention Facilities." Id. at 819. The ADH subsequently issued additional guidance for correctional facilities. Id.
>
> In its March 27 guidance, the ADH recommended the use of personal protective equipment ("PPE") to inmates and staff to the extent possible. Id. at 821. The ADC immediately began to manufacture and distribute cloth masks for inmates and staff, purchased additional PPE on the open market, and obtained PPE from ADH. Id. Every staff member and inmate in general population was supplied with one mask first, and then the ADC continued producing masks to ensure each inmate in general population could have a second mask. Id. Inmates in isolation were not given masks at the start of the pandemic. Id. This is because CDC guidance at the time stated that masks do not protect the mask-wearing individual from the risk of contracting the virus, but instead, protected others by preventing the mask-wearing individual from spreading the virus, should they be COVID-positive. Id. Because inmates in restrictive housing do not come into contact with other inmates and only have limited exposure to staff (who were wearing masks) they did not require masks under this guidance. Id. ADC staff were directed to wear masks and gloves when interacting with inmates, including those in restrictive housing. Id. Additionally, ADC ordered enhanced cleaning and disinfecting procedures, and provided inmates in restrictive housing with their own cleaning products twice a week to sanitize their cells. Id. at 822.
>
> With regard to staff, the ADC directed staff to remain home if sick. Id. at 819. The ADC implemented wide-spread COVID-19 testing on employees and conducted contact-tracing of people who had contact with infected staff. Id. at 826. Staffing decisions about COVID-positive but asymptomatic employees were made upon

    guidance with the ADH. Id. at 826-27. Certain COVID-19 positive, asymptomatic staff reported to work. Id. at 827.

No. 4:21-CV-00280-KGB-PSH, 2022 WL 4717982, at *3.

    This Court, too, takes notice of those facts. United States v. Jackson, 640 F.2d 614, 617 (8th Cir. 1981) ("'Judicial notice is particularly applicable to the court's own records of prior litigation closely related to the case before it.'") (internal citation omitted).

    Courts considering inmate challenges to prison and jail Covid-19 protocol and prevention in the spring and early summer of 2020 consistently have found that, during or near the time period in question, "there was no clearly established constitutional right to be housed in a Covid-free environment." Harmon v. Harris, No. 4:22-CV-00716-BRW-ERE, 2023 WL 1767578, at *4 (E.D. Ark. Jan. 10, 2023), report and recommendation adopted, No. 4:22-CV-00716-BRW-ERE, 2023 WL 1766482 (E.D. Ark. Feb. 3, 2023), aff'd, No. 23-1371, 2023 WL 5499595 (8th Cir. May 15, 2023) (citing Tate v. Arkansas Dep't of Corr., No. 4:20-CV-558-BSM-BD, 2020 WL 7378805, at *11 (E.D. Ark. Nov. 9, 2020) ("The issues and challenges posed by COVID-19 are unlike any other in the modern era. COVID-19 is, by definition, a 'novel' coronavirus. Accordingly, the Court cannot conclude that reasonable officials would have known that the response to COVID-19 of officials at Cummins violated Plaintiffs' clearly established constitutional rights."); Wright, No. 4:21-cv-00280-KGB-PSH, 2022 WL 4717982, at *5 (holding that "[e]ven if the ADC's response to the COVID-19 pandemic were found to be inadequate and a constitutional violation, the Defendants are entitled to qualified immunity because their actions in implementing that response did not violate clearly established federal law."); Jones v. Lay, No. 4:20-CV-01325-BRW-BD, 2021 WL 687342, at *3 (E.D. Ark. Jan. 25, 2021) ("At the time of the events giving rise to this lawsuit, reasonable correction officers would not have known that allowing Mr. Jones to remain in the barracks for six days after his negative [Covid-19] test results was a violation of clearly

8

established law."); Neal v. Arkansas, No. 3:20-CV-00200-JJV, 2021 WL 2336954, at *5 (E.D. Ark. June 8, 2021) ("Under the circumstances, considering the newness of the virus and developing knowledge about Covid-19 and how it is spread, Defendants cannot be held liable for acting in this gray area.")).

The Court of Appeals for the Eighth Circuit has agreed with this outcome. See, for example, Harmon v. Harris, No. 23-1371, 2023 WL 5499595, at *1 (8th Cir. May 15, 2023).

Plaintiff's Complaint here makes the same types of claims in connection with which courts repeatedly have found qualified immunity applies based on the lack of clearly established law defining the violation. The result should be the same here. Even if a violation occurred, there was no clearly established law that would have put any Defendant on notice that his or her actions were unconstitutional. Accordingly, the Court finds that qualified immunity applies to Plaintiff's conditions of confinement and related failure to train or supervise claims and recommends those claims be dismissed without prejudice.

**IV.   Conclusion**

IT IS, THEREFORE, RECOMMENDED that:

1. Plaintiff's 42 U.S.C. § 1983 claims be DISMISSED without prejudice for failure to state a claim on which relief may be granted;

2. Pursuant to 28 U.S.C. § 1367(c)(3), the Court decline to exercise jurisdiction over any state law negligence claim Plaintiff raised; and

3. The Court certify, pursuant to 28 U.S.C. § 1915(a)(3), that an in forma pauperis appeal from any Order adopting these recommendations and accompanying Judgment would not be taken in good faith.

Dated this 28th day of September, 2023.

_____
JEROME T. KEARNEY
UNITED STATES MAGISTRATE JUDGE